IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOHNNY JOE MOLINA, JR., <br> Institutional ID No. 118126, <br><br> Plaintiff, <br><br> v. <br><br> WELL PATH, *et al.*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br> CIVIL ACTION NO. 5:20-CV-081-BQ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Johnny Joe Molina, Jr. filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights in connection with his detention at the Lubbock County Detention Center (LCDC). Am. Compl. 3–8, ECF No. 8. Molina seeks monetary damages for his alleged injuries. *Id.* at 5.

Molina filed his original Complaint on April 17, 2020. ECF No. 1. The United States District Judge granted Molina's Application to Proceed *In Forma Pauperis* (IFP) and transferred this case to the undersigned United States Magistrate Judge. ECF Nos. 4, 10, 12. The undersigned thereafter reviewed Molina's operative Complaint[1] and authenticated records provided by Defendants and ordered Molina to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he timely completed and returned. ECF Nos. 15, 16.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

---

[1] Molina filed his Amended Complaint on June 4, 2020. ECF No. 8.

## I. Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327. When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Molina's Claims

Molina asserts claims against the following Defendants: (1) Nurse Practitioner Kevin Cole; (2) Nurse Kevin Wattington; and (3) EMT Samaj Cole.[2] Am. Compl. 3. Molina sues all Defendants for their alleged failure to provide adequate medical care with respect to an arm injury he claims to have sustained while confined at LCDC, and he also sues Defendant Samaj Cole for further injuring his arm through an improper medical examination, although he attempts to frame the claim as one for excessive force. Questionnaire 6.

According to Molina, he fought with a fellow inmate on December 6, 2019. Am. Compl. 5. He injured his arm and face during the altercation and subsequently declined medical treatment from the nurse who examined him for injuries to his face. *Id.*; Questionnaire 1. Molina also told the nurse his arm hurt but that "[he] would be alright." Am. Compl. 5; Questionnaire 1. He then waited a "few weeks" to see if the pain would go away. Am. Compl. 6. On February 3, 2020, almost two full months after the altercation, Molina "complained to medical that [his] arm was in a great deal of pain." *Id.* Soon after, a nurse examined Molina and referred him to Defendant Kevin Cole, who Molina contends "looked at [his] arm with a quick 2 second glance" without ever "physically examin[ing] [his] arm, shoulder, or elbow." Questionnaire 2. Nevertheless, Molina admits Defendant Kevin Cole prescribed ibuprofen for 90 days, a muscle relaxer for 7 days, and ordered x-rays. *See id*; Am. Compl. 6.

"A week or so later" Molina was called to medical, where he alleges Defendant Wattington informed him that the x-rays showed "no broken bones" and "no fractures of any kind." Am. Compl. 6. When Molina asked "what was next," he claims Wattington told him that there was

---

[2] Molina pleads no facts specifying Defendant Cole's title or job description; however, according to the authenticated records he is an emergency medical technician (EMT).

"nothing else [they] [could] do for [him]." *See id.*; Questionnaire 2. Molina avers that he then told Wattington "there was a big ball in [his] forearm" and "bruising in [his] arm," to which Wattington responded that he could "place [Molina] in medical pod untell [sic] it heals" but told Molina that he "[didn't] need it."[3] Am. Compl. 6; *accord* Questionnaire 2.

Molina claims his arm "continued to give [him] pain" over the coming weeks and that he frequently met with medical personnel. Am. Compl. 7. A nurse gave Molina a sling for his arm on February 18, 2020. Questionnaire 3. And on March 8, a nurse visited his pod to examine his arm and opined that "something was wrong"—she suspected a torn "rotary cup" [sic] or torn tendons or ligaments. Am. Compl. 7. The nurse referred Molina to a doctor, who, on March 12, examined him, scheduled an MRI, and prescribed Tylenol and muscle relaxers. *Id.*; Questionnaire 3. Molina acknowledges that he reported to medical personnel that "[his] pain was controlled with decreased movement." Questionnaire 3. On April 9, before he had the MRI, Molina alleges he further injured his arm after being startled by a banging on his door, after which he jumped out of bed and fell on the floor. *Id.* at 4. Subsequently, Defendant Samaj Cole evaluated him, and Molina avers that during the evaluation, while he was not looking, Defendant "roughly grabbed [his] shoulder, knowing [he] was in pain" and "said does this hurt[?]" *Id.*; Am. Compl. 3. In response, Molina asserts that he "screamed in pain," and Defendant Samaj Cole commented, "oh he's fine" and walked away without "look[ing] back or say[ing] anything else." Questionnaire 4–5.

Molina later obtained the MRI, and he alleges the doctor told him it showed a benign tumor (lipoma) and a possible torn labrum,[4] resulting in him being "put in to see a surgeon." *Id.* at 7–9;

---

[3] According to Molina, he was not placed in a medical pod. Questionnaire 2. Molina does not make clear, however, whether he declined Defendant Wattington's offer or Defendant Wattington merely failed to approve the transfer.

[4] Molina's pleadings are inconsistent as to when he received the results of the first MRI. In his Amended Complaint, he claims that a doctor shared the results with him on May 14. Am. Compl. 8. In his Questionnaire, however, Molina asserts that "it was all discussed in 2nd MRI." Questionnaire 9.

Am. Compl. 8; Questionnaire 7–8. Following this initial MRI, Molina believes he reinjured his arm when he "fell off a chair." Questionnaire 7. Records indicate, and Molina agrees, that he initially refused to go to medical; however, he later agreed, and was evaluated and cleared. *Id.* Molina subsequently received a second MRI, after which he contends the doctor told him that "there was no tares [sic] in [his] elbow." *Id.* at 9. Molina asserts that the doctor "said to continue decrease in movement of shoulder and arm and continue[] [his] medication." *Id.*

Molina acknowledges that between December 6, 2019, and June 22, 2020 (the date he received the results of his second MRI), he met with medical personnel more than a dozen times. *See id.* at 1–9. During these appointments, as detailed above, medical personnel continually (1) provided him with medication, (2) examined and/or tested him, and (3) referred him to specialists. He contends, however, that Defendants provided inadequate care, and he "believe[s] [his] arm will never be the same as before cause of inproper [sic] care." *Id.* at 11. In his Complaint, Molina avers that he "continue[s] to be in pain" and fears "los[ing] [his] arm" due to his "being a type 1 diabetic." Am. Compl. 8.

### B. Molina's allegations that Defendants were deliberately indifferent to his medical needs fail to state a viable constitutional claim.

Molina asserts generally that the named Defendants "did not provide proper care and treatment." Questionnaire 11. He alleges that he risks losing his arm due to his diabetes, and that if (1) Defendant Kevin Cole "would have ordered an MRI on [his] shoulder and arm right after the x-rays" and (2) Defendant Wattington had done something other than telling him "there's nothing else they could do" and offering to place him in a medical pod, Molina "wouldn't have had to be in pain" and his arm would not have healed incorrectly. Am. Compl. 8; Questionnaire 12. Molina also claims that because he was in a "great deal of pain," Defendant Cole should have done "some kind of physical examination" that might have led him to choose a different course of treatment.

Questionnaire 12. Stated differently, Molina contends that the care he received from Defendants Kevin Cole and Wattington was delayed and therefore inadequate. *See id.* at 11–12. Finally, Molina avers that Defendant Samaj Cole further damaged his already injured arm by improperly conducting a physical examination. *Id.* at 4–6.

The Constitution imposes on government officials the duty to provide adequate medical care.[5] *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs"). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotations omitted)), and requires satisfaction of both an objective and subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, prison officials act with deliberate indifference only where they (1) know the inmate faces a substantial risk of serious harm and (2) disregard that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that a prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

---

[5] As a pretrial detainee at the time in question, Molina's rights derive from the Fourteenth Amendment rather than the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (stating that pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Because basic human needs (such as medical care) are the same for pretrial detainees and convicted inmates, courts apply the same standard under either amendment. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

A prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty. TX*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable constitutional claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

*1. Defendants Kevin Cole and Wattington*

Molina asserts that Defendants Kevin Cole and Wattington "did not provide proper care and treatment." Questionnaire 2–4, 11. More specifically, Molina believes that Defendant Kevin Cole, rather than cursorily examining his arm and prescribing medicine, should have inspected it more closely and immediately ordered an MRI. *Id.* at 12. And he avers that Defendant Wattington, upon reviewing his x-ray results, should have provided some unspecified, additional course of treatment beyond offering to place him in a medical pod until his arm healed. *Id.* at 13.

Properly construed, rather than alleging that Defendants refused *all* care or treatment, Molina's pleadings express apparent dissatisfaction with the *type or level* of care provided. A claim that medical personnel failed to conduct a close physical examination, however, does not state a viable constitutional claim. *See Barnes v. Johnson*, 204 F. App'x 377, 379 (5th Cir. 2006) ("[Plaintiff's] assertion that [the defendant] did no more than a cursory examination but did not conduct a more through [sic] 'physical' examination . . . alleges, at most, negligence or medical malpractice, which do not give rise to a § 1983 cause of action, and an inmate's disagreement with his medical treatment does not establish a constitutional violation."); *Sample v. Rodeen*, 90 F. App'x 701, 702 (5th Cir. 2004) (concluding plaintiff "[did] not show[] the defendants acted with subjective recklessness or that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference," when the doctor removed plaintiff's ground floor housing restriction "without conducting a physical examination"). Similarly, a claim that medical personnel should have provided additional or specialized care constitutes mere disagreement over treatment, which is not actionable. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (explaining that the question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical

8

judgment"); *Auguillard v. Toce*, CIVIL ACTION NO. 14-394-JJB-RLB, 2015 WL 5093842, at *5 (M.D. La. Aug. 27, 2015) (collecting cases) (explaining that "a decision to refer an inmate for additional treatment, tests or evaluation is a matter of professional medical judgment that the courts will not normally second-guess in the context of a claim of deliberate medical indifference").

Further, Molina acknowledges that he met with medical personnel regarding his arm injury on at least the following dates: February 4, 2020;[6] February 6, 2020; February 18, 2020; March 8, 2020; March 12, 2020; April 9, 2020; April 16, 2020; May 13, 2020; and May 14, 2020. Questionnaire 1–4, 6–7. Moreover, Molina underwent two MRIs for his arm on April 30 and June 2. *Id.* at 6, 8. Succinctly put, Molina acknowledges that medical personnel *did* ultimately refer him for additional, specialized testing and treatment. *See id.* at 3, 6–8. Defendants' alleged failure to provide Molina with his desired course of specialized treatment according to *his* schedule, however, does not amount to a constitutional violation. *See Weddle v. Collins*, 53 F.3d 1281 (5th Cir. 1995) (characterizing prisoner's complaint that he should not have had to wait two months to receive pain medication as disagreement with medical treatment and, therefore, not actionable); *Harris v. Donaldson*, No. 95-10265, 1995 WL 725438, at *2 (5th Cir. Nov. 3 1995) (finding that while plaintiff had a "quarrel with the quality and quantity of his medical treatment," there was no deliberate indifference where plaintiff received, inter alia, consultations with a specialist); *Mendez v. Jefferson Par. Corr. Ctr.*, Civil Action No. 13-6756, 2014 WL 2768773, at *7 (E.D. La. June 18, 2014) (concluding that "[a]lthough [plaintiff] apparently experienced some delay and expressed dissatisfaction with the type and quality of his care, it is clear that he received constitutionally adequate medical attention" where "he was seen by a physician and other medical personnel on numerous occasions, transported to a hospital for specialized treatment and regularly

---

[6] As previously noted, the two month delay resulted from Molina's desire to wait a "few weeks" to see if the pain would go away. Am. Compl. 6.

and continuously provided with an array of medications and x-rays for his various conditions"); *Boyd v. Lasher*, Civil Action No. 09-7508, 2010 WL 1817805, at *8 (E.D. La. Mar. 9, 2010) (holding that plaintiff "received fully adequate medical care for his cancer" because he was afforded, inter alia, "specialized follow-up care, a CT scan, a bone scan and dietary supplements").

Because it is clear by these facts and Molina's own admissions that he did receive constitutionally adequate medical care (*see* Questionnaire 11), the Court examines whether Molina can state a viable claim for *delayed* medical treatment. A delay in treatment, however, "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

In response to the Court's query as to how any delay in treatment violated his constitutional rights or harmed him, Molina claims that ordering an MRI immediately after his X-rays would have reduced his pain and allowed his arm to heal correctly. *See* Questionnaire 10–11. Molina also asserts a more generalized harm in that he believes he faces an increased risk of losing his arm due to his diabetes and the possibility of developing an infection. Am. Compl. 8. When asked to describe the basis for this concern as it relates to his present injuries, Molina generally discussed knowing others with diabetes who lost their limbs and his knowledge that an infection could cause him to lose an appendage. Questionnaire 10 ("We also have close friends who are diabetic and have lost there [sic] limbs as well as there [sic] lives to the smallest infection! I was told by medical staff that yes if I had an infection in my arm there could be a possibility of losing my arm. So I was concerned that if there was a tare [sic] in my arm it could get infected and therefor lose my arm."). Molina does not allege, however, that any delay in treatment actually caused an infection, or that a medical professional made a specific diagnosis of increased risk of infection or losing his

arm due to the lack of or delay in treatment for the lipoma;[7] he merely conclusorily draws a connection between his diabetes, arm injury, and future possible consequences.[8] *See id.*

Nor does Molina provide any factual support for his concern that "[his] arm is healing, but not in the proper way." *Id.* at 11. Unsubstantiated fears[9] do not rise to the level of substantial harm. *See, e.g., Uzomba v. Univ. Health Sys., B.C.A.D.C.*, 558 F. App'x 474, 474–75 (5th Cir. 2014) (concluding plaintiff did not show substantial harm where he "asserted only general, conclusory damages that *could* result from the delay in medical care"); *Walker v. Rajwani*, CIVIL ACTION NO. 4:16cv99, 2017 WL 916399, at *5 (E.D. Tex. Mar. 8, 2017) ("Plaintiff's conclusory statement . . . fails to allege substantial harm from the delay of treatment."); *Cormier v. Lee*, Civil Action No. 14–2423, 2014 WL 5803076, at *3 (W.D. La. Nov. 7, 2014) (dismissing at screening where, despite plaintiff's allegations that "he [was] experiencing substantial harm, . . . he offer[ed] only his conclusory opinions to substantiate that claim"); *Willis v. Catahoula Corr. Ctr.*, No. 09-CV-1510, 2010 WL 2710405, at *5 (W.D. La. May 14, 2010) (dismissing claim at screening where plaintiff's substantial harm allegations were "purely speculative and conclusory"), *R. & R. adopted by* 2010 WL 2710383 (W.D. La. July 6, 2010); *Lewis v. Cotton*, No. 3-08-CV-2293-N, 2009 WL 1228482, at *2 (N.D. Tex. May 4, 2009) ("That plaintiff cannot sleep at night because he is afraid

---

[7] The Court similarly finds no support for such allegations in the authenticated records. Moreover, according to the Mayo Clinic, a lipoma "isn't cancer and usually is harmless," and "[t]reatment generally isn't necessary." *Lipoma*, MAYOCLINIC.COM, https://www.mayoclinic.org/diseases-conditions/lipoma/symptoms-causes/syc-20374470 (last visited Jan. 19, 2021). Accordingly, the Court concludes that there is no reasonable basis for Molina's assertion.

[8] Molina expresses *concern* that a tear *could have* caused an infection, which in turn could result in Molina losing his arm. *See* Questionnaire 10. As noted above, however, the second MRI revealed that "there was no tares [sic] in [his] elbow" (*id.* at 9) and, more significantly, Molina has provided no facts showing he in fact developed an infection or lost his arm as a result.

[9] The Court finds Molina' allegations distinguishable from those set forth in *Alderson v. Concordia Par. Correctional Facility*, 848 F.3d 415, 423 (5th Cir. 2017). There, the Fifth Circuit reversed the district court's dismissal of a pretrial detainee's deliberate indifference claim where he alleged substantial harm based on "excruciating pain" and the defendant's failure to provide antibiotics and painkillers *prescribed by a doctor to prevent pain and infection*. *Id.* at 418–19, 423. Here, Molina has offered nothing more than unfounded speculation as to what harm, if any, the delay may have caused.

of 'going in a coma' . . . without more, does not" constitute substantial harm); *Stangel v. UTMB Michael Unit*, Civil Action No. 6:07cv287, 2007 WL 4353432, at *5 (E.D. Tex. Dec. 11, 2007) ("Plaintiff has not alleged facts showing that he was substantially harmed due to the delays. He made only conclusory claims that the delays affected his daily activities and he believes that he will be permanently disabled, however, conclusory allegations are insufficient."); *Williams v. Browning*, No. Civ.A. V-03-157, 2006 WL 83433, at * 1–3 (S.D. Tex. Jan. 11, 2006) (dismissing claim of diabetic inmate who failed to allege facts demonstrating substantial harm caused by the inability to obtain medications on time); *Sledge v. Dawson State Jail*, No. 3–03–CV–0202–R, 2003 WL 21501821, at *2 (N.D. Tex. June 24, 2003) (same), *aff'd*, 91 F. App'x 931 (5th Cir. Feb. 6, 2004).

To the extent Molina alleges that any delay caused continued pain, i.e., he "wouldn't have had to be in pain" if Defendant "Kevin Cole would have ordered an MRI on [his] shoulder right after the x-rays . . . as well as [Defendant] Kevin Wattington telling [Molina] there's nothing else they could do" (Questionnaire 10–11), such a claim, accepted as true, is nevertheless insufficient. The presence of pain, without more, does not rise to the level of substantial harm. *See King v. Kilgore*, 98 F.3d 1338, 1338 (5th Cir.1996) (unpublished) (stating that delay in medical care causing pain and discomfort was insufficient to establish substantial harm); *Kelm v. Tigner*, CIVIL ACTION NO. 20-0017, 2020 WL 1490966, at *6 (W.D. La. Mar. 5, 2020) (holding that ongoing pain and tingling . . . [did] not amount to substantial harm"), *R. & R. adopted by* 2020 WL 1492548 (W.D. La. Mar. 26, 2020); *Williams v. Dallas County*, No. 3–01–CV–0400–D, 2003 WL 21662823, at *3 (N.D. Tex. July 14, 2003) ("Although he did not receive pain medication and antifungal shampoo for more than two months after his initial request, there is no evidence that this delay was the result of deliberate indifference on the part of any defendant or caused

substantial harm."). Moreover, the authenticated records show (and Molina appears to generally agree) that medical personnel continually responded to his complaints of pain and prescribed medication accordingly in an attempt to manage Molina's pain. *See Neubert v. Med. Adm'r*, Civil No. 3:05-CV-0393-H, 2006 WL 3478732, at *5 (N.D. Tex. Dec. 1, 2006) (concluding six month delay between referral and treatment was "a significant delay" but "[t]he regular medical evaluations negate any inference of blameworthy intent" and although prisoner "document[ed] pain (exacerbated by his refusal to accept some of the pain medications), he provide[d] no evidence of measurable, lasting, substantial harm for which 'mere delay' in treatment would justify recompense").

More significantly, even were the Court to find that Molina suffered substantial harm as a result of Defendants' delay in scheduling an MRI, he cannot establish deliberate indifference because the ongoing medical treatment he received indicates that medical personnel did not show deliberate indifference to his medical needs. *See, e.g.*, *Norton*, 122 F.3d at 291–92 (noting that "prison officials were neither reckless nor deliberately indifferent to [plaintiff's] . . . serious medical needs" where plaintiff "was afforded extensive medical care" by those officials); *Carter v. Lafourche Par. Sheriff's Office*, Civil Action No. 13-4896, 2013 WL 5969655, at *7 (E.D. La. Sept. 13, 2013) (recommending dismissal of prisoner's deliberate indifference claim, even after a delay, "in light of the continuing and long-term medical attention" he received for his heart condition), *R. & R. adopted by* 2013 WL 5969610 (E.D. La. Nov. 8, 2013); *Day v. Kyle*, Civil Action No. 6:08cv386, 2009 WL 2901179, at *14 (E.D. Tex. Sept. 2, 2009) ("[Plaintiff] has received a substantial quantum of medical care. It may well be that this care has not always been 'the best that money can buy,' and that [he] has experienced occasional delays;" however, "he [did] not show[] that the prison officials refused to treat him, ignored his complaints, or engaged

in any conduct evincing a wanton disregard for serious medical needs."); *Carrera v. Hunt*, Civil Action No. 6:08–CV–0032–BI ECF, 2008 WL 5973782, at *5 (N.D. Tex. Oct. 20, 2008) ("Plaintiff's own testimony demonstrates that when he did submit requests directly to the medical department, he was seen by [Defendant], he was prescribed medication, and his complaints were noted."), *R. & R. adopted by* 2009 WL 1066304 (N.D. Tex. Apr. 21, 2009). Accordingly, the District Judge should dismiss Molina's claims against Defendants Kevin Cole and Wattington.

*2. Defendant Samaj Cole*

Molina claims that Defendant Samaj Cole, while examining Molina for treatment after he fell on the floor, "roughly grabbed [his] shoulder, knowing [he] was in pain" and asked him "does this hurt[?]" before walking away. *See* Am. Compl. 3; Questionnaire 4. Although Molina attempts in his Questionnaire responses to couch this claim as one for excessive force (*see* Questionnaire 6), Molina admits Defendant Samaj Cole came to see him specifically in response to an officer's request to medical for someone to examine Molina's arm after he fell. *Id.* at 4. Liberally construed, the Court interprets Molina's claim against Defendant Samaj Cole as alleging that he showed deliberate indifference to Molina's medical needs when he purportedly grabbed Molina's arm in a rough manner while examining and evaluating him. Questionnaire 4–6.[10]

---

[10] The Court does not construe Molina's claim as one for excessive force because he pleads no facts demonstrating that Defendant Samaj Cole used "force" against him without penological justification or "for the very purpose of causing harm." *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Rather, Molina questions Defendant Cole's evaluative methods and inquires, "Why would a nurse knowing a patient is in pain just grab my shoulder like nothing and then leave[?]" Questionnaire 6. The Court sees nothing constitutionally suspect in a medical professional manipulating or palpating a patient's arm and asking if it causes pain. Moreover, even if the Court were to evaluate Molina's allegation as an excessive force claim, the undersigned would nevertheless recommend dismissal because he only alleges temporary shoulder pain (Questionnaire 4–6), i.e., a de minimis injury. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (affirming district court's dismissal of plaintiff's claims for excessive force where injury consisting of "a sore, bruised ear lasting for three days" was de minimis); *Spicer v. Collins*, 9 F. Supp. 2d 673, 687 (E.D. Tex. 1998) (concluding that "pain in . . . [the] neck, arms, and hands" resulting in part from an officer grabbing plaintiff's arm, was, at most, de minimis). In sum, based on the facts Molina alleges, the Court interprets Molina's claim solely as one for deliberate indifference to a serious medical need.

In light of the "ongoing medical treatment" Molina received here (*see* II.B.1 *supra*), "the only remaining logical possibility for liability is that [Defendant Samaj Cole] fiendishly and deliberately set out to injure rather than benefit the inmate." *Menard v. Wagner*, Civil Action No. G-09-9, 2011 WL 10549396, at *4 (S.D. Tex. Mar. 2, 2011) (citing *Bass v. Sullivan*, 550 F.2d 229, 232 (5th Cir. 1977)); *see also Tobias v. Brown*, Civil Action H-17-1757, 2019 WL 5788135, at *6 (S.D. Tex. Nov. 6, 2019) ("[E]vidence of examinations and treatment negate [plaintiff's] claim of deliberate indifference."). An inmate cannot make this showing, however, where he has not alleged an "adequate motive," and where the treatment pursued "is generally along standard lines" for treating the injury. *Bass*, 550 F.2d at 232.

Here, Molina does not allege that Defendant Cole had a motive to cause him pain or further injure his arm. *See* Questionnaire 4–6. And Defendant Samaj Cole's physical examination of Molina's shoulder, as well as his subsequent question—"[D]oes this hurt[?]"—are consistent with a medical provider's effort to discover the source of a patient's pain and provide appropriate treatment.[11] Thus, Molina's assertions with respect to Defendant Samaj Cole do not state a cognizable claim of deliberate indifference. *See Williams v. Scheef*, CIVIL ACTION NO. 5:18-CV-138-BQ, 2018 WL 11146000, at *3–4 (N.D. Tex. Dec. 11, 2018) (concluding that a plaintiff's allegations that a nurse repeatedly removed and re-inserted a catheter against his wishes, "knowing [he] was in great pain," constituted, at best, a claim for negligence or medical malpractice), *aff'd on other grounds*, 824 F. App'x 268 (5th Cir. 2020); *Dickerson v. Murray*, CIVIL ACTION NO. 3:11-CV-200, 2014 WL 12526722, at *2 (S.D. Tex. Jan. 15, 2014) ("Where there are indications of a course of treatment for an inmate's condition . . . the only remaining logical possibility for

---

[11] Authenticated records confirm that Defendant Samaj Cole met with Molina because Molina requested medical treatment. More specifically, the records show that Molina "complained of pain on his left shoulder" and "[m]edical staff evaluated and cleared [him.]"

liability is that the physician fiendishly and deliberately set out to injure rather than benefit the inmate . . . [and] that did not happen" where defendants provided treatment but "alleged[ly] refus[ed] to perform" the inmate's preferred treatment.); *Menard v. Wagner*, Civil Action No. G–09–8, 2011 WL 10549396, at *4 (S.D. Tex. Mar. 2, 2011) (concluding defendants "clearly did not" "fiendishly and deliberately set out to injure rather than benefit the inmate" where inmate was examined, "given pain medication and palliative treatment and x-rays were ordered"), *aff'd*, 457 F. App'x 352 (5th Cir. 2011); *Sama v. Hannigan*, Civil Action No. G-09-69, 2010 WL 3155877, at *4–5 (S.D. Tex. Aug. 10, 2010) (holding that defendants did not "fiendishly and deliberately set out to injure rather than benefit the inmate" when defendants examined plaintiff and exercised medical judgment to determine course of treatment).

The undersigned therefore recommends that the District Judge dismiss Molina's claim against Defendant Samaj Cole.

### III. Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice all claims asserted against all Defendants for failure to state a claim in accordance with 28 U.S.C. §§ 1915 and 1915A.

### IV. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 21, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE